APPELBAUM et ux. v. SPINNER–HAY LUMBER CO. (No. 599.)

(Court of Civil Appeals of Texas. El Paso. May 25, 1916.)

1. CONTRACTS ☞198(2) — BUILDING CONTRACT—SUPPLEMENTAL AGREEMENT.

Where, after houses were built under a contract to do so according to plans and specifications, the owner claiming they were not completed in accordance with the contract, a supplemental contract was made, whereby part of the contract price was paid at once, and the balance placed with a third person to be held till the contractor had done certain things, among them, "have all the tinwork on said houses done with proper fall and in proper workmanlike manner," the only proper way to do the tinwork is according to the original specifications.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 862–865; Dec. Dig. ☞198(2).]

2. APPEAL AND ERROR ☞1056(1) — HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Exclusion of the portion of the specifications as to manner of placing gutter, offered by defendant in an action by a building contractor for balance of price, was harmless, defendant having offered no evidence of failure to so place the gutter.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187, 4191, 4207; Dec. Dig. ☞1056(1).]

3. CONTRACTS ☞328(1) — BUILDING CONTRACTS — PRIVILEGE OF OWNER — WORK AT CONTRACTOR'S COST.

It being by provision of a supplemental contract between building contractor and owner, a condition precedent to the contractor's right to recover the part of the contract price withheld, that certain tinwork should be done in a proper and workmanlike manner, it cannot avail the contractor, failing to do so, that on his failure the owner did not avail himself of the privilege given by the contract to do it and charge the cost against the contractor.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1571–1580, 1583, 1584; Dec. Dig. ☞328(1).]

4. CONTRACTS ☞323(3) — ACTION — PEREMPTORY INSTRUCTIONS.

Defendant's testimony that the work had not been properly done, though meager, was enough to raise an issue on the vital question, requiring submission to the jury, and making the giving of a peremptory instruction error.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1544, 1547, 1827; Dec. Dig. ☞323(3).]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by the Spinner-Hay Lumber Company against J. Appelbaum and wife. Judgment for plaintiff, and defendants appeal. Reversed and remanded for new trial.

Meyer C. Wagner, of Houston, for appellants. Love, Channell & Fouts, of Houston, for appellee.

HIGGINS, J. Appelbaum and wife entered into an agreement with the Spinner-Hay

Lumber Company, whereby the latter agreed to construct and complete six cottages according to certain plans and specifications, in consideration whereof the Appelbaums agreed to pay the sum of $2,790. The houses having been built, a controversy arose between the parties as to whether or not the houses had been constructed and completed in accordance with the terms of the contract. Thereupon the parties entered into a written contract whereby the Appelbaums agreed to pay and did pay to appellee $2,566 and the balance of the contract price, namely, $224, was placed in the hands of Meyer C. Wagner, to be held in escrow until appellee had done certain work upon the buildings. This contract reads:

"This agreement made this 17th day of September, 1913, by and between E. Spinner and S. E. Hay, composing the firm of Spinner-Hay Lumber Company, acting through E. Spinner hereafter styled first party, and J. Appelbaum and wife, Ida Appelbaum, hereafter styled party of the second part, witnesseth:

"The first party has constructed certain improvements for second party on lots 1, 2, and 3, block 1, William Burnett addition north side of Buffalo bayou under a contract providing for payment of sum of $2,790 for completion under terms of contract, plans and specifications, and differences have arisen between the parties as to completion thereof in full compliance, and the parties are desirous of adjusting and settling the differences and for that purpose do agree as follows:

"That the second party will pay to the first party the sum of $2,790 as follows: $2,566 to be paid to first party this day and receipt of which sum is hereby acknowledged, and the remaining sum of $224 to be placed with Meyer C. Wagner to be held in escrow until the first party has completed the work herein recited to be done by said first party.

"First party is to have the water pipes properly placed and tapped with city main using new pipe and to connect with sidewalk at proper places on which houses are not situated, and cutoff to be placed, pipe to be one inch pipe and be so connected as to bring water to houses making clear connection so that houses have water as contemplated and understood by original contract and as herein provided to be done; that all costs and expenses for pipe, labor, material and connections to be paid by first party and work to be started at once and fully completed not later than Monday, September 22, at 6 o'clock p. m., 1913, and failure to so complete laying of pipes and all work relating to same and furnishing of water by that date, said first party binds and obligates himself to pay second party the sum of $3 for each day's delay from that time until properly done and connected and water furnished, and for the purpose of further protecting said second party the sum of $224 retained and placed in escrow shall be held until completion thereof.

"The amount actually held for water is $150, but said sum shall be held with the $224 until all of the remaining work understood herein is finished and completed in a proper manner.

"The first party will fix and repair three windows and the estimated value thereof $3 and, failing to fix said windows by September 19th, second party shall be authorized to do said work and withhold the sum of $3 therefor.

"First party is to furnish four keys for inside rooms, and, failing to furnish said keys by evening of September 18th, the sum of $4 shall be retained to secure payment therefor by second party who is then authorized to have keys fitted.

"First party obligates·himself to have all of the tinwork on said houses properly done with proper fall and in proper workmanlike manner and which work is to be done by Wednesday, September 24, 1913, and failing to do said work by that date, second party is authorized to contract for said work to be done and all costs and expenses therefore will be paid by first party; that of the amount placed in escrow $71 is to protect against claim now outstanding by tinner for payment for his work and which work has not been accepted by second party and a controversy has arisen between second party and first party and between tinner and first party as to proper work. It is distinctly understood that the tinwork must be properly done with proper fall and in a first-class workmanlike manner. Should first party fail to do and perform and complete said tinwork as required by September 24, 1913, second party is authorized to proceed to contract for such work to be done and the sum held in escrow shall be applied in payment therefor, and should amount not be sufficient then first party hereby admits liability for any deficiency in amount in escrow to cover payment for all obligations herein undertaken by first party, and such amount shall be paid as itemized statements from competent workmen show actual cost.

"First party, upon execution hereof, binds himself to deliver possession of said houses to second party, and such possession and occupancy shall not be a waiver of any legal rights as to the items herein specified, but shall be an acceptance of all other portions thereof, and as to items herein mentioned, acceptance thereof is not made by second party and so expressly understood."

This suit was· filed by appellee against the Appelbaums and Wagner to recover said $224, alleging that it had complied with its obligations under the contract just quoted.

In their answer, the Appelbaums admitted that appellee had placed the water pipes as it had agreed to do, but averred that it had failed to place the cut-off as provided in the contract, and that the cost of placing the same was $5. They denied that plaintiff had fixed and repaired the windows as required, and averred that they had done so at a cost of $2.60. They admitted that keys had been supplied as the contract required. They denied that the tinwork on the houses had been done with proper fall and in a proper and workmanlike manner, and that it would cost $120 to do so, which amount they were entitled to receive from the escrow fund with which to have said tinwork properly done. They also averred that the Texas Tinners' Supply Company had a claim for $71 and lien for tinwork on the houses, and that defendants were entitled to this amount out of the escrow fund to protect against said claim and lien.

By supplemental petition, appellee denied the allegations of the answer, and with reference to the claim that the tinwork had not been properly done it pleaded specially:

"That the tinwork and labor on said houses was properly done in accordance with said contract of settlement declared on by the plaintiffs herein, and that the defendants, by failing to have any work, claimed to be defective or insufficient or omitted by the plaintiffs, contracted for, and an itemized statement from competent workmen showing the actual cost for doing said work, as required by said contract, are not en-

titled to have or receive or further hold the money so placed in escrow under the contract pleaded by the plaintiffs."

E. Spinner testified for plaintiff:

"I am a member of the firm of Spinner-Hay Lumber Company, a partnership doing business in the city of Houston, Harris county, Tex. Spinner-Hay Lumber Company had a contract with Mr. and Mrs. J. Appelbaum for the construction of six houses upon lots 1, 2, and 3 in block 1 of the William Burnett addition to the city of Houston, for the total consideration of $2,790. Upon completion of the work Mrs. Appelbaum claimed that there was some portions of the work which had not been properly done, and we had a settlement of the matter, by which $2,566 was paid to us in cash and $224 was paid over to Meyer C. Wagner under a contract dated May 17, 1913, which has been offered in evidence. After this money was paid, we went to work to do the work which is specified in the supplemental contract, in order to get it completed by the time fixed in the contract for doing it. We did all that work within the time specified. The water pipes were properly placed and tapped with the city main and cut-offs placed as required, and three windows fixed, but I was not there when the man who fixed them did the work, and so Mr. Appelbaum paid the $3, and he is entitled to a credit for that amount. The keys were furnished the inside rooms as required by the contract, and all the other work was done within the time specified. As soon as this supplemental contract was made I sent a man out to these houses and instructed them to go over the tinwork and fix whatever was necessary to put it in proper workmanlike shape, with proper fall, which he did. The $71 referred to in the contract as being held to protect against the claim of the tinner has been taken care of. I paid the tinner; in fact, he brought suit against me on this claim and I paid the judgment, so that part of it is all settled and out of the way."

Mrs. Appelbaum, for defendants, testified:

"I am the wife of J. Appelbaum and one of the defendants in this suit. The tinwork on these houses has not been done properly, and when it rains the water runs off of the houses onto the ground. I went to see Mr. Wagner and asked him to let me have the money, out of the money in his hands in escrow, to pay to have the tinwork done, but Mr. Wagner said he could not let me have the money without an order from the Spinner-Hay Lumber Company. I did not have the tinwork done. It is not done yet. I did not have it done because I did not have the money to pay for it and Mr. Wagner could not agree to pay it out of the money in escrow."

Cross-examination:

"I believe my husband paid $3 for the windows. I never employed any one to fix the tinwork and have never presented any itemized statements for such work from any workman. The reason I did not have the work done and take chances on getting it out of this money in escrow was because I did not want to take chances on that, and besides I did not have the money to spare. I thought it should be paid out of that money in Mr. Wagner's hands."

The foregoing, together with the settlement contract of September 17, 1913, was all the evidence adduced upon the trial. A peremptory instruction was given to find for the appellee in sum of $221.40, in accordance wherewith verdict was returned and judgment rendered.

[1] From the statement made, it will be noted that in determining the right of appellee to recover, it was very material to inquire whether the tinwork upon the houses had been properly done. By the contract of September 17th, appellee obligated itself "to have all of the tinwork on said houses properly done with proper fall and in proper workmanlike manner." Since the houses were built according to plans and specifications, it is quite obvious that the only proper way to do the tinwork was to do it according to those specifications.

Upon trial, defendants offered in evidence a part of the original specifications as follows:

"Tinwork.

"A five-inch gutter shall be placed along the entire length of the building on each side and shall be divided with necessary down spouts."

This was excluded upon appellee's objection that the specifications were not a part of the supplemental contract and escrow agreement of September 17th, and because it was irrelevant and immaterial to any issue what the original specifications contained concerning the tinwork on the houses. What has been said above shows the lack of merit of these objections. Performance of the tinwork in accordance with the specifications of the original contract was the very essence of that portion of the supplemental contract relating to the tinwork. Inquiry as to the requirements of these specifications was thus very relevant and material.

[2] But the error in excluding the specifications here complained of would not be reversible, because there is no evidence in the record or evidence tendered and excluded showing a failure to place the gutter with down spouts as therein provided. In the absence thereof, the error in the exclusion of this portion of the specifications would be harmless, but in view of a retrial, attention is called thereto as the errors next noted require reversal.

[3] Error is assigned to the exclusion of evidence that the tinwork was not done in a proper and workmanlike manner with proper fall; to show the condition of the tinwork, and the cost of placing same in a proper and workmanlike manner with proper fall; and of the refusal to permit defendants to offer evidence in rebuttal of the testimony of Spinner that the work was all done in a proper and workmanlike manner and with proper fall. This testimony was all material. It was incumbent upon plaintiffs to plead and prove those facts. They did plead them and offered testimony in support thereof. Manifestly, defendants, under their general denial, were entitled to disprove the allegations and evidence relied upon by the plaintiffs to sustain their suit, and necessary to sustain it. The fact that the defendants had not availed themselves of the privilege given in the contract of having the tinwork done and charging the cost thereof against plaintiffs, would not have the effect of entitling the appellee to the fund until they had done the tinwork in a proper and workmanlike manner and

with proper fall. Under the contract of September 17th it was a condition precedent to plaintiff's right to recovery that the tinwork should be so done.

[4] The court also erred in giving the peremptory instruction. The meager evidence which the defendants were permitted to adduce raised an issue as to whether the work had been done as provided by the settlement contract, as Mrs. Appelbaum, in contradiction of Spinner, testified that the tinwork on the houses had not been done properly. This raised the vital issue in the case, and it was the duty of the court to submit it to the jury.

For the error in excluding the evidence complained of in appellant's bills of exception and in giving the peremptory instruction, the cause is reversed and remanded for retrial.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes